## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

PAGE TELEVISION AND VIDEO
PRODUCTIONS, INC.,

               Plaintiff,

v.

TELEVISION FOOD NETWORK, G.P.,

               Defendant.

Civil File No. 11-cv-1256 ADM/JSM

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

(JURY TRIAL DEMANDED)

### ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

For its Answer to the Complaint, Defendant Television Food Network, G.P.

("TVFN") states and alleges as follows:

### GENERAL DENIAL

TVFN denies each and every allegation, matter or thing contained in the

Complaint which is not specifically admitted, qualified, or answered herein.

### THE PARTIES

1.     TVFN denies information sufficient to respond to the allegations of paragraph

1of the Complaint and they are therefore denied.

2.     The first sentence is admitted.  The second sentence is denied, except TVFN

admits that it operates the Television Food Network.

3.     Denied.

## JURISDICTION AND VENUE

4.    Admitted.

5.    TVFN denies the allegations of paragraph 5 of the Complaint except admits that TVFN has transacted business within Minnesota and that this Court has personal jurisdiction over TVFN.

6.    TVFN denies the allegations of paragraph 6 of the Complaint except admits that venue is proper in this judicial district.

## FACTS

7.    Denied.

8.    Denied.

9.    The first sentence of paragraph 9 of the Complaint is admitted.  TVFN denies the allegations of the second sentence of paragraph 9 of the Complaint except it states that the parties entered into ten amendments.  The third sentence is a definition that does not require a response.

10.   TVFN denies that paragraph 10 of the Complaint properly characterizes the Ninth Amendment to the Contract and therefore denies the allegations of paragraph 10 of the Complaint, and refers to the contract for its terms.

11.   TVFN denies that paragraph 11 of the Complaint properly characterizes the Contract and therefore denies the allegations of paragraph 11 of the Complaint, and refers to the contract for its terms.

12.     Denied.

13.     Denied.

14.     Denied.

15.     Denied.

## COUNT ONE

(Breach of Contract Against TVFN)

16.     Admitted.

17.     Denied.

18.     Denied.

## COUNT TWO

(Breach of the Implied Covenant of Good Faith and Fair Dealing Against TVFN)

19.     Paragraph 19 of the Complaint contains a legal conclusion for which no

response is necessary, but is denied.

20.     Denied.

21.     Denied.

22.     Paragraph 22 of the Complaint purports to request a jury trial to which no

response is required.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

23.     Page has failed to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

24.     Page's claims are barred, in whole or in part,  by the doctrine of waiver and/or

equitable estoppel.

## THIRD AFFIRMATIVE DEFENSE

25.     Page's claims are barred, in whole or in part, by the doctrine of unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

26.     Page is barred from the asserted recovery alleged in its Complaint because it

failed to satisfy one or more condition precedents to TVFN's performance

under the contract.

## FIFTH AFFIRMATIVE DEFENSE

27.     Page is barred from the asserted recovery alleged in its Complaint because it

breached or otherwise failed to comply with its obligations under the Contract.

## SIXTH AFFIRMATIVE DEFENSE

28.     To the extent Page breached the Contract, such breach acts to excuse any

further performance on the part of TVFN.

## SEVENTH AFFIRMATIVE DEFENSE

29.     Page is barred from the asserted recovery alleged in its Complaint by the

doctrines of anticipatory breach/repudiation.

## EIGHTH AFFIRMATIVE DEFENSE

30.    Page is barred from the asserted recovery alleged in its Complaint because it
breached the implied covenant of good faith and fair dealing.

## NINTH AFFIRMATIVE DEFENSE

31.    Page's damages, if any, were caused by its own negligence and wrongful acts.

## TENTH AFFIRMATIVE DEFENSE

32.    Page failed to take the necessary and proper steps to mitigate its damages.
Page's recovery, if any, should be reduced accordingly/ Page is barred from the
asserted recovery alleged in its Complaint because it has failed to take the
necessary and proper steps to mitigate its damages.

## ELEVENTH AFFIRMATIVE DEFENSE

33.    Page assumed the risk of any damages it may have sustained.

## TWELFTH AFFIRMATIVE DEFENSE

34.    Without admitting any obligation or liability and expressly denying the same,
to the extent Page has been paid for any part of its claim, TVFN is entitled to
an offset equivalent to said payment(s).

## THIRTEENTH AFFIRMATIVE DEFENSE

35.    Without admitting any obligation or liability and expressly denying the same,
Page is barred from any or a portion of the asserted recovery alleged in its

Complaint because it engaged in acts and courses of conduct which rendered it *in pari delicto*.

## FOURTEENTH AFFIRMATIVE DEFENSE

36.   TVFN reserves the right to assert other defenses as discovery proceeds/ TVFN expressly and specifically reserves the right to amend this answer to add, delete, and/or modify affirmative defenses based upon legal theories, facts, and circumstances which may or will be developed through discovery and/or further legal analysis of its position in this litigation.

## COUNTERCLAIM

For its Counterclaim against Plaintiff Page Television And Video Productions, Inc. ("Page"), Defendant Television Food Network, G.P. ("TVFN") states and alleges as follows:

## PARTIES

1.   Defendant Television Food Network, G.P. ("TVFN") is a Delaware general partnership with its principal place of business at 75 Ninth Avenue, New York, New York 1011.

2.   On information and belief, Plaintiff Page Television and Video Productions, Inc. ("Page") is a New Jersey corporation with its principal place of business at 12800 Industrial Park Boulevard, Suite 135, Plymouth, Minnesota 55441.

## JURISDICTION AND VENUE

3.      Subject matter jurisdiction is proper in this Court under 28 U.S.C. §1332 because

the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs, and is a dispute between citizens of different States.

4.      Personal jurisdiction exists with respect to Page as its principal place of business is

in Minnesota.

5.      Venue is appropriate because Page has its principal place of business in

Minnesota.

## FACTS

6.      On January, 30 2007, Page and TVFN entered into a Series Production Agreement

for the series of television programs entitled "Diners, Drive-ins and Dives" (the

"Series").  The parties subsequently entered into ten amendments.  The Series

Production Agreement and amendments thereto are hereinafter referred to as the

"Contract."

7.      The Ninth Amendment to the Contract governs the Fifth Optional Set of Episodes

("Episodes"), which consists of cycles 12, 13, and 14 of the Series.  Each cycle

consists of 13 Episodes in the Series.

8.      The Series and/or Episodes and all elements, portions and components thereof,

together with all work product and all other materials furnished by Page, whether

intangible or reduced to tangible form (the "Materials"), are works for hire for

TVFN.

9.      TVFN is the sole and exclusive author of the Materials for all purposes, and the worldwide owner of all rights, including copyright, to and in the Materials, including any original footage and still photos from any such Episodes.

10.     TVFN's ownership rights in the Materials survive the expiration or early termination of the Contract.

11.     Page was required to deliver Episodes of the Series according to a delivery schedule set forth by TVFN, and to deliver to TVFN any original footage created by Page in connection with the Series and/or any Episode.

12.     Page failed to deliver to Episodes of the Series to TVFN on or before their respective  delivery date, entitling TVFN to elect to terminate the Contract.

13.     Page was required to deliver the first Episode of cycle 12 of the Series on or before April 15, 2011, and the remaining Episodes on a rolling basis thereafter in accordance with a delivery schedule determined by TVFN.

14.     TVFN has the right to take over production of the Series or any Episodes, and it may, among other things, substitute Page as the Executive Producer of the Series.

15.     Page is prohibited from promoting the Series, or any portion thereof, in any form, by any means, uses, or media, other than by TVFN.

16.     TVFN paid Page certain costs for cycles 12, 13, and 14 in advance of the shooting schedule for cycle 12, pursuant to a payment schedule that provides for certain benchmark payments to be made that are calculated based on a per episode fee which must be earned by actually delivering the Episodes ordered.

17.   TVFN made certain advance payments to Page in an amount that significantly exceeded the per episode fee of the episodes that Page actually delivered.

18.   Page has breached the Contract in numerous ways by, among other things, mistreating staff and others working on the Series, failing to deliver TVFN's footage and other materials in accordance with the delivery schedule, and promoting the Series on its website in violation of the Contract.

19.   In or around September 2010, shortly after the Ninth Amendment was signed, Page began to mistreat staff and others working on the Series.

20.   For example, Page's principle David Page often berated staff with name-calling and personal attacks in e-mails, such as calling staff members "a vile unformed piece of sh* *"; "you are one f**cked up dumba** loser"; and "a**hole."  Other examples include:  "I hope you die so I can dance on your f**ing grave";  "jeezus f***ing christ people. . . it was weeks ago that i said know your material, not only dont you know it, you misinform me about it, i just dont f***ing get it"; and "lets assume im a genius from now on. . . lets all assume i know what the f*** im doing. . . this is no longer a democracy."

21.   David Page's treatment towards staff became so intolerable that TVFN had no choice but to ask Page for changes in working conditions, which TVFN had a right to demand under the terms of the Contract.  For reasons unknown to TVFN, Page refused to implement those changes.

22.   While TVFN made every effort to work with Page to remedy the intolerable staffing situations, such efforts became futile.

23. Accordingly, the parties began a series of discussions about terminating the Contract early, and allowing Page to complete certain work that had already commenced.

24. Then, suddenly, in the midst of those discussions, Page anticipatorily breached and repudiated the Contract.

25. In a series of discussions afterwards, TVFN made clear to Page's counsel that it considered this conduct to be a repudiation of the Contract.  Further TVFN advised Page that it considered the Contract terminated and advised Page to mitigate its costs.

26. Despite demand by TVFN, Page failed to surrender and deliver the Materials in connection with the Series to TVFN.

27. Specifically, Page failed to timely surrender and deliver to TVFN certain Episodes for which it shot footage for the 12th and 13th cycles of the Series.

28. While Page eventually turned over some of the work it had done on these Episodes, such Episodes were incomplete and Page missed critical deadlines in doing so, resulting in harm and damages to TVFN, such as lost advertising revenue, the need to expend monies on production items and completion of the Episodes that were Page's responsibility under the Contract, and other economic harm.

29. Page is still wrongfully withholding other work performed on cycles 12 and 13, and other Materials that are owned by TVFN.

30.     In addition, based on the number of Episodes completed (4 out of 39), TVFN

overpaid Page in an amount to be determined at trial, but in an amount that is at

least $1,500,000.00.

31.     Page has also failed to surrender and deliver to TVFN any raw materials, including

any raw footage, animations, graphics, or music, for any cycles of the Series.

32.     Page continues to promote the Series on its website, www.pageprod.com, in

violation of the Contract.

33.     Page's conduct constitutes a material breach of the Contract.

34.     Despite demand by TVFN, Page has failed to return funds advanced to it in excess

of the amount specified for the Episodes delivered in an amount to be determined

at trial but that is at least $1,500,000.00, plus other damages, including damages

for the late delivery of incomplete Episodes 1204-1213.

## FIRST COUNTERCLAIM
(Breach of Contract)

35.     Paragraphs 1-34 are hereby incorporated by reference and realleged as if fully set

forth and herein.

36.     The Contract between TVFN and Page was valid and enforceable.

37.     Page has failed to comply with many of its material obligations and promises

under the Contract.

38.     Page has breached the Contract by, among other things, mistreating staff and

others working on the Series, failing to deliver TVFN's Materials in accordance

with the delivery schedule, and promoting the Series on its website.

39.   TVFN performed its obligations under the Contract.

40.   Page repudiated and/or anticipatorily breached the Contract.

41.   Page's conduct constitutes a material breach of the Contract.

42.   As a result of Page's breach of contract, TVFN has suffered, and continues to
suffer, damages in an amount to be determined at trial of at least $1,500,000.00,
plus expenses, costs and attorney's fees.

## SECOND COUNTERCLAIM
(Breach of Implied Covenant of Good Faith and Fair Dealing)

43.   Paragraphs 1-42 are hereby incorporated by reference and realleged as if fully set
forth herein.

44.   Page breached its obligation to deal fairly with TVFN by, among other things,
mistreating staff and others working on the Series, failing to deliver TVFN's
Materials in accordance with the delivery schedule, and promoting the Series on
its website.

45.   As a result of Page's breach of the implied covenant of good faith and fair dealing,
TVFN has suffered, and continues to suffer, damages including expenses, costs
and attorney's fees.

## THIRD COUNTERCLAIM
(Injunctive Relief)

46.   Paragraphs 1-45 are hereby incorporated by reference and realleged as if fully set
forth herein.

47.     Page continues to possess TVFN's footage and other materials, including all elements, portions and components thereof, whether in electronic or other physical form, in connection with the Series without right or privilege.

48.     Page continues to utilize TVFN's footage as a promotional vehicle on Page's website in violation of the Contract.

49.     Despite demand by TVFN, Page has failed to surrender and deliver to TVFN the Materials in connection with the Series.

50.     Specifically, Page failed to timely surrender and deliver to TVFN certain Episodes of the Series.

51.     Page has also failed to surrender and deliver to TVFN any raw materials, including any raw footage, animations, graphics, or music, for any seasons of the Series.

52.     TVFN is the sole and exclusive worldwide owner of the Materials in connection with the Series.

53.     TVFN is entitled to immediate possession of the Materials in connection with the Series.

54.     TVFN will suffer irreparable injury for which no adequate remedy at law exists unless Plaintiff  is (a) enjoined from using the Materials in connection with the Series; (b) ordered to advise TVFN of the location or locations of the Materials; and (c) ordered to surrender and deliver to TVFN the Materials.

## FOURTH COUNTERCLAIM IV
(Specific Performance)

55.     Paragraphs 1-54 are hereby incorporated by reference and realleged as if fully set

forth herein.

56.     Page continues to possess TVFN's footage and other materials, including all

elements, portions and components thereof, whether in electronic or other physical

form, in connection with the Series without right or privilege.

57.     Page continues to utilize TVFN's footage as a promotional vehicle on Page's

website in violation of the Contract.

58.     Despite demand by TVFN, Page has failed to surrender and deliver to TVFN the

Materials in connection with the Series.

59.     Specifically, Page has failed to surrender and deliver to TVFN certain Episodes of

the Series.

60.     Page has also failed to surrender and deliver to TVFN any raw materials, including

any raw footage, animations, graphics, or music, for any seasons of the Series.

61.     TVFN is the sole and exclusive worldwide owner of the Materials in connection

with the Series.

62.     TVFN is entitled to immediate possession of the Materials in connection with the

Series.

63.     TVFN will suffer irreparable injury for which no adequate remedy at law exists

unless Page  specifically performs its obligations under the Contract, and delivers

the Materials to TVFN at Page's expense and to any location that TVFN directs.

## FIFTH COUNTERCLAIM
(Conversion)

64.     Paragraphs 1-63 are hereby incorporated by reference and realleged as if fully set

        forth herein.

65.     Page continues to possess TVFN's footage and other materials, including all

        elements, portions and components thereof, whether in electronic or other physical

        form, in connection with the Series without right or privilege.

66.     Page continues to utilize TVFN's footage as a promotional vehicle on Page's

        website in violation of the Contract.

67.     Despite demand by TVFN, Page has failed to surrender and deliver to TVFN the

        Materials in connection with the Series.

68.     Specifically, Page has failed to surrender and deliver to TVFN certain Episodes of

        the Series.

69.     Page has also failed to surrender and deliver to TVFN any raw materials, including

        any raw footage, animations, graphics, or music, for any seasons of the Series.

70.     TVFN is the sole and exclusive worldwide owner of the Materials in connection

        with the Series.

71.     TVFN is entitled to immediate possession of the Materials in connection with the

        Series.

72.     TVFN will suffer irreparable injury for which no adequate remedy at law exists

        unless Plaintiff  is (a) enjoined from using the Materials in connection with the

Series; (b) ordered to advise TVFN of the location or locations of the Materials; and (c) ordered to surrender and deliver to TVFN the Materials.

### SIXTH COUNTERCLAIM
(Unjust Enrichment)

73.    Paragraphs 1-72 are hereby incorporated by reference and realleged as if fully set forth herein.

74.    Page has failed to return funds advanced to it in excess of the amount specified for the Episodes delivered in the amount of at least $1,500,000.00, plus other damages, including damages for the incomplete and/or late delivery of certain Episodes of the Series.

75.    Page has acknowledged, accepted, and benefited from the funds advanced to it in excess of the amount specified for the Episodes delivered in the amount of at least $1,500,000.00.

76.    It is inequitable and unconscionable for Page to enjoy the benefit of funds advanced to it in excess of the amount specified for the Episodes delivered (and to be delivered) in the amount of at least $1,500,000.00.

## JURY DEMAND

77.     TVFN hereby demands a jury on its counterclaims to the extent so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, TVFN respectfully requests that this Court:

1.      Enter judgment for TVFN and award damages in an amount to be determined
at trial in an amount of at least $1,500,000.00;

2.      Enter an Order or Decree to compel Page to surrender and deliver the Materials
at the Plaintiff's expense and to any location that TVFN directs;

3.      Enter an Order or Decree to compel Page to specifically perform its obligations
under the Contract, and to surrender and deliver the Materials at Page's
expense and to any location that TVFN directs;

4.      Enter an Order or Decree to compel Page to return funds advanced to it in
excess of the amount specified for the Episodes delivered (and to be delivered)
in the amount of at least $1,500,000.00, plus other damages, including
damages for the late and incomplete delivery of Episodes;

5.      Award TVFN its attorneys' fees and costs; and

6.      Grant such other and further relief as the Court deems just and equitable.

Dated: August 11, 2011

                                        s/Heather M. McElroy
                                        Joel A. Mintzer (#224169)
jamintzer@rkmc.com
Heather M. McElroy (#34168X)
hmmcelroy@rkmc.com
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota  55402

(612) 349-8500
(612) 339-4181 (fax)

David Leichtman (admitted *pro hac vice*)
dleichtman@rkmc.com
Avani P. Bhatt (admitted *pro hac vice*)
apbhatt@rkmc.com
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
601 Lexington Avenue, 34th Floor
New York, NY 10022-1240

(212) 980-7400
(212) 980-7499 (fax)

**ATTORNEYS FOR DEFENDANT**

75211029.1